IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JERRY C. HUFF,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Respondent. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br><br>Case No. 2:12-cv-709<br>*Related to Case No.*: 2:08-cr-371<br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court on Petitioner Jerry C. Huff's ("Mr. Huff") Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 that he filed *pro se* on July 18, 2012. (Dkt. No. 1). The court DENIES Mr. Huff's § 2255 Motion because Mr. Huff has failed to adequately demonstrate entitlement to relief on the claims asserted.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2003, Mr. Huff obtained a second mortgage on a home he was constructing in Moab, Utah, which home was to be used as a bed and breakfast upon completion. The loan application package contained a falsified appraisal. It included photographs of the home that had been modified and did not reflect the true condition of the home. It also falsely appraised the value to be $1.6 million dollars, when other legitimate appraisals and estimates all valued it well under $1 million.

Additionally, the loan package contained personal tax forms for the relevant years. The tax forms were fraudulent because Mr. Huff never filed tax statements for the years 2000, 2001, 2002, or 2003. Finally, Mr. Huff's stated income on the application was $15,000 per month, although Mr. Huff represented to the bankruptcy court that his total income for all of 2003 was $6,000. When the loan funded, Mr. Huff received two separate checks, which he deposited into his bank account.

On June 11, 2008, Mr. Huff was indicted on five different criminal counts including one count of Wire Fraud in December 2003 in violation of 18 U.S.C. § 1343, two counts of Money Laundering in December 2003 in violation of 18 U.S.C. § 1957(a), and two counts of Failure to File Tax Returns for tax years 2002 and 2003 in violation of 26 U.S.C. § 7203. A jury trial commenced one year later in June 2009.

Mr. Huff elected to testify at trial. During his testimony, he stated that he had worked with a mortgage broker named Michael Porazinski, and that it was Mr. Porazinski who falsified the information in the loan package. Despite the fact that Mr. Huff signed the loan documents, he testified that he never saw the appraisal, the stated value of the property which appeared on a signature page, nor the falsified tax forms. Mr. Huff testified, however, that he stood by the stated income of $15,000 per month, and that it was his attorney who incorrectly stated his income to the bankruptcy court. In other words, for each piece of negative evidence, Mr. Huff testified that someone else falsified the documents and that he never saw the documents or knew about the fraud. On June 5, 2009, twelve members of the jury unanimously returned a verdict of "guilty" on all five counts.

On March 30, 2010, the court sentenced Mr. Huff to prison for a year and a day in the custody of the Bureau of Prisons and imposed 60 months of supervised release to follow, along

with $264,050.34 in restitution. Judgment was entered against Mr. Huff on April 12, 2010 and Mr. Huff filed a Notice of Appeal to the judgment on April 13, 2010. On April 19, 2011, in response to Mr. Huff's appeal, the United States Court of Appeals for the Tenth Circuit entered judgment affirming Mr. Huff's conviction and denying his appeal. The Tenth Court issued its Mandate on May 11, 2011.

Mr. Huff, a former federal prisoner in the custody of the Bureau of Prisons and now out of prison on supervised release, seeks habeas relief under § 2255 for ineffective assistance of counsel in both the trial and appellate stages of his case. He also seeks relief for alleged violations of due process based on prosecutorial misconduct and new evidence.

## ANALYSIS

I.     TIMING AND APPLICATION OF A SECTION 2255 MOTION

     A.     Timing

A habeas petition under 28 U.S.C. § 2255 applies to "[a] prisoner in custody under sentence of a court established by Act of Congress." 28 U.S.C. § 2255(a). Typically, such a petition must be filed within one year of "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). When a defendant appeals his conviction, the judgment does not become final until "the Supreme Court affirms it on direct review, denies certiorari, or (in the absence of a certiorari petition) the time for filing a certiorari petition expires." *United States v. Sandoval*, 371 Fed. Appx. 945, 948 (10th Cir. 2010) (quotations and citation omitted). The Supreme Court has specified that a writ of certiorari must be filed within 90 days after "entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate." Supreme Court Rule 13(1), (3).

In this case, Mr. Huff filed a direct appeal regarding his conviction. The Tenth Circuit entered its judgment affirming Mr. Huff's conviction on April 19, 2011. Mr. Huff subsequently filed his *pro se* § 2255 Motion with the court on July 18, 2012. With respect to the one-year limitation period for filing a § 2255 Motion, the last day Mr. Huff could timely file his motion was July 18, 2012, the very day that he filed it.[1] Thus, although it was on the final possible day to timely file, Mr. Huff met the time requirements to file his § 2255 Motion.

B. **Prisoner in Custody**

The writ of habeas corpus also shall not extend to a prisoner unless . . . . [the prisoner] is in custody." 28 U.S.C. § 2241(c)(1)-(3). Mr. Huff, as a person serving a term of supervised release, is "in custody" within the meaning of 28 U.S.C. § 2255. *See e.g., Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002); *United States v. Brown*, 117 F.3d 471, 474-75 (11th Cir. 1997); *United States v. Essig*, 10 F.3d 968, 970 (3rd Cir. 1993); *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995); *Jones v. Cunningham*, 371 U.S. 236, 241-43 (1963). The court therefore has jurisdiction to review the substance of Mr. Huff's motion.

II. **STANDARD OF REVIEW**

Because Mr. Huff is proceeding *pro se*, the court must construe his pleadings liberally. *Allred v. United States*, No. 2:08-CV-245, 2009 U.S. Dist. LEXIS 112542, *2 (D. Utah Dec. 3, 2009) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)). Mr. Huff still has the burden, however, to allege "sufficient facts on which a recognized legal claim could be based," and it is not proper for the "court to assume the role of advocate for the *pro se* litigant." *Id.* "The court need not accept as true a *pro se* plaintiff's 'conclusory allegations.'" *Flynn v. United States*, No. 2:10-cv-973, 2011 U.S. Dist. LEXIS 146522, *5 (D. Utah Dec. 16, 2011) (quoting

---

[1] The Tenth Circuit entered its judgment on April 19, 2011 and the additional 90-day time period established the filing deadline as July 18, 2012.

*Hall*, 935 F.2d at 1110). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Allred*, 2009 U.S. Dist. LEXIS 112542 at *2 (citations omitted).

## III.   ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL

Mr. Huff asserts he had ineffective assistance of counsel at both the trial and appellate stages of his case. For Mr. Huff to prevail on his ineffective assistance of counsel claim, he must show that his attorneys "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] strong presumption [exists] that counsel's conduct falls within the wide range of reasonable professional assistance," and that counsel's actions constituted "sound trial strategy.'" *Id.* at 689 (quotations and citation omitted). Mr. Huff must overcome this presumption. Additionally, Mr. Huff "must show that the deficient performance prejudiced [his] defense." *Id.* at 687. To establish prejudice, Mr. Huff "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Mr. Huff asserts he had ineffective assistance of counsel based on multiple grounds. The court addresses the claims against trial counsel in this Section and against appellate counsel in Section VI below.

### A.    Failure to Investigate Mr. Porazinski or Call Witnesses to Testify About Him

Mr. Huff asserts his counsel, Robin Ljungberg, failed to timely interview Michael Porazinski before Mr. Porazinski's untimely death, and then counsel allegedly lied about the date he died. Mr. Huff further alleges his counsel failed to investigate Mr. Porazinski's roommate

5

"John Doe" or call other witnesses to attest about Mr. Porazinski's involvement and his lack of ethics.

Mr. Huff was indicted on June 11, 2008, Mr. Ljungberg was appointed in July 2008, and Mr. Porazinski died unexpectedly on October 11, 2008. Under the circumstances, it was not unreasonable for Mr. Ljungberg to not investigate Mr. Porazinski during that short time period.

Moreover, Mr. Ljungberg effectively presented the "alternative perpetrator" theory to the jury that Mr. Porazinski was the person who committed the fraud by obtaining false appraisals and submitting false tax statements. To support this theory, Mr. Ljungberg argued for and obtained permission to introduce Mr. Porazinski's two past felony convictions for fraud and forgeries, which established he had knowledge and ability to commit those crimes. Given the nature of this evidence, Mr. Huff has failed to show there is a reasonable probability the outcome would have been different had Mr. Ljungberg interviewed Mr. Porazinski prior to his death or called other witnesses regarding his actions. Furthermore, even if Mr. Ljungberg had interviewed him, and even if Mr. Porazinski had confessed that he was the person who obtained the fraudulent appraisals and tax statements, it still does not excuse Mr. Huff's signature on the loan applications attesting the information in the packet was truthful.[2] The jury heard Mr. Huff's testimony about his lack of knowledge and rejected it. For each of these reasons, the court finds Mr. Ljungberg was not ineffective on this ground.

B. **Failure to Interview or Call Other Potential Witnesses**

Besides failing to call witnesses associated with Mr. Porazinski, Mr. Huff also asserts his counsel failed to interview or call a sundry of other witnesses.

---

[2] As for when Mr. Ljungberg stated Mr. Porazinski died, the court finds that fact irrelevant because it was not presented to the jury and had no impact on their verdict.

i. Failure to Interview the Government's Witnesses

First, Mr. Huff baldly asserts his counsel was ineffective because he did not interview the government's witnesses before trial. In a declaration, Mr. Ljungberg explains that he did not interview the witnesses because he did not want to give the witnesses clues about his trial strategy. The declaration was not signed under penalty of perjury or before a notary public. It therefore fails to meet the standard set forth in 28 U.S.C. § 1746, and is therefore not considered by the court.

Nevertheless, Mr. Ljungberg was not required to interview the prosecution's witnesses to provide effective assistance. Mr. Ljungberg adequately cross-examined such witnesses at trial and Mr. Huff presented no basis to conclude that had the witnesses been interviewed before trial, there is a reasonable probability the outcome would have been different.

ii. Failure to Call Experts

Mr. Huff further asserts his counsel should have hired experts to testify "[1] That anyone could have produced fake appraisals, [2] computer and photograph alteration expert, [3] handwriting expert for signature on appraisals." From these bald assertions, the court is unable to make any reasoned judgment about how expert testimony would have likely altered the outcome of the case. Mr. Huff does not elaborate on what the testimony would have been or how such testimony would have rebutted the government's evidence. The court is without a factual basis to conclude how such expert testimony may have altered the outcome. The court notes again, however, that even if Mr. Huff had shown that others falsified the documents, it still would not excuse his failure to review the loan documents when he attested the information in them was true.

iii. Failure to Call Witnesses About the True Condition of the Home

Mr. Huff also asserts his counsel was ineffective because he failed to call Mr. Huff's children and Julie Connelly to testify about the condition of the home and that Mr. Huff lived in it. Mr. Huff fails to articulate, however, how such evidence reasonably impacted the verdict. Credible evidence was presented that Mr. Huff never completed the home or obtained an occupancy permit. Thus, if someone did live in the home, they did so in violation of county ordinances. Second, even if the jury believed that the inspector authorized the occupation via a letter that Mr. Huff purported he received, it would not have negated the fact that the condition and value of the home were not what was presented in loan package Mr. Huff signed off on.

Likewise, if Mr. Ljungberg had called Mr. Huff's former fiancé to testify about Mr. Huff's income, that evidence would not have negated the falsified tax forms that were included in the package. Simply coming up with a list of witnesses that Mr. Ljungberg could have called falls well below the standard necessary to show ineffective assistance of counsel.

**C. Failure to Discredit Witnesses**

i. Brian Ballard

Next, Mr. Huff asserts his counsel failed to discredit Brian Ballard as a biased witness because prior to trial Mr. Ballard had accused Mr. Huff of having an affair with his wife. Although bias is a concern, so too is tainting the jury against a defendant for an alleged affair. As a builder, Mr. Ballard testified about what he thought the property was worth and he provided pictures of the structure at issue. Mr. Ljungberg properly objected to one picture because it showed some demolition work that had been done in 2007. With that clarification, the pictures spoke for themselves about the condition of the structure in 2003 when Mr. Huff obtained the loan. Thus, even if Mr. Ballard had been biased, it would not have altered this evidence.

Moreover, the estimate provided by Mr. Ballard was in keeping with testimony provided by other witnesses. The fact that Mr. Huff disagrees with those estimates does not equate to ineffective assistance of counsel.

        ii.      <u>Kyle and Josh Lind</u>

Mr. Huff also asserts his counsel did not adequately discredit Kyle and Josh Lind, especially since Mr. Huff recently learned the Lind files contained false information about a Rainland loan application.[3] Mr. Huff contends this shows that the false applications were created by Kyle and Josh Lind and that they had a willingness to lie. First, this new assertion goes against Mr. Huff's testimony at trial that Mr. Porazinski was responsible for all of the false documents. And again, even if the Linds did lie about the origin of the false documents, it would not negate that on loan after loan, including the one at issue in this case, Mr. Huff signed loan packages attesting that the information contained in them was true. Mr. Huff was involved in construction before he was indicted. His testimony that he never reviewed the loan packages, never saw the appraisals, never saw the presented value of the property, never saw the tax forms, and never saw the income statements could reasonably be rejected by the jury. Assuming for the sake of argument, however, that such testimony is true, willful blindness does not constitute a defense under such circumstances. *See* Jury Instruction No. 29 given in this case. Mr. Huff was charged with a scheme to defraud or falsely obtain money. The evidence was sufficient to sustain the jury's verdict on this charge. Accordingly, the court finds Mr. Huff has failed to show a reasonable probability that the outcome of the trial would have been different even if his counsel had elicited this information during the trial.

---

[3] The Rainland application occurred about February 2004, and it purported the value of the property had risen to $2.1 million in the intervening months between December 2003 and February 2004.

9

### D. Failure to Present Exculpatory Evidence

Mr. Huff further asserts his counsel failed to present exculpatory evidence or rebut certain facts alluded to by the government. First, Mr. Huff asserts Chris Layton should have been called to testify he prepared the architectural plans because the government indicated Mr. Huff had drawn the plans. Mr. Huff fails to show, however, how this fact potentially altered the outcome of the trial. Even if Mr. Layton had been called, such testimony would not have altered the contents of the loan package that Mr. Huff signed.

Mr. Huff asserts his counsel failed to show Mr. Huff could legally operate a bed and breakfast at his home. Testimony from an inspector never stated it would be impossible to operate the bed and breakfast. Rather, the main problem related to an outbuilding that Mr. Huff acknowledged would have had to have been annexed into the city in order for it to be permissible to have two structures on a one acre lot. Again, whether the home was a bed and breakfast or merely a single family residence would not have altered the falsified loan application or Mr. Huff's signature on that application.

### E. Failure to Move for Acquittal or New Trial and Cumulative Ineffectiveness

Finally, Mr. Huff asserts his counsel was ineffective because he failed to move for a judgment of acquittal and the cumulative effect of all the things Mr. Ljungberg failed to do resulted in an improper conviction. The court disagrees. Mr. Huff has failed to show any deficiency in his counsel's preparation, trial strategy, or conduct at trial. The facts of this case were not favorable to Mr. Huff, yet, Mr. Ljungberg presented a vigorous defense. The court therefore finds no error, much less a cumulative error, on Mr. Ljungberg's part that deprived Mr. Huff of a fair trial.

Additionally, Mr. Ljungberg had no basis to move for a judgment of acquittal, nor has Mr. Huff provided anything other than bald assertions as to why his counsel should have moved for acquittal or a new trial. The evidence was sufficient to sustain the verdict.[4] Hence, the court finds no error on this ground.

## IV.     ALLEGED PROSECUTORIAL MISCONDUCT

The next basis on which Mr. Huff relies is alleged prosecutorial misconduct. Mr. Huff's main ground for prosecutorial misconduct is that the government omitted exculpatory evidence that proved his income was adequate to qualify for the loan. Assuming for the sake of argument that Mr. Huff's income was $14,000 or $15,000 a month rather than the $6,000 reported to the bankruptcy court for the entire year of 2003, Mr. Huff has failed to explain how this would have reasonably altered the outcome of the trial. Mr. Huff testified at trial that his income was $15,000 a month and that the amount declared to the bankruptcy court was incorrect. Consequently, the jury had this evidence. Moreover, the loan was not based solely on his stated income. It was based on false tax records and a false appraisal as discussed above. The court therefore finds no misconduct of the government on this ground.

Mr. Huff further alleges the government lied to Dalene Nielson about whether the property was zoned for a bed and breakfast and that it suggested she did not have to testify at trial. How this is relevant to the verdict is not specified. Mr. Huff admitted the property would need to be annexed to allow for the outbuilding and the inspector never denied the potential to obtain permission for a bed and breakfast at the main structure. Hence, the court also finds no misconduct on this ground.

---

[4]     Moreover, if Mr. Huff is now attempting to challenge the sufficiency of the evidence, such a challenge is procedurally barred because he did not raise it during his direct appeal. *United States v. Tony*, 637 F.3d 1153, 1159 (10th Cir. 2011).

11

Next, Mr. Huff alleges the government omitted evidence to show that his architectural plans did have a proper architectural stamp on them. This fact, at most, has miniscule importance to Mr. Huff's criminal case, and is thus insufficient to provide a basis for relief.

Mr. Huff further alleges the government misrepresented that photographs showed the condition of the home. As stated above, however, clarification was provided at trial regarding one of the photographs and there was no evidence to show that the other photographs were not an accurate representation of the structure.

Finally, as in previous parts of his motion, Mr. Huff again makes a number of bald assertions, without foundational support, about why there was prosecutorial misconduct such as mischaracterization of the evidence, "[s]uggesting evidence for which there was no basis of fact or did not exist," and "[i]ntimidating witnesses." The court will not cull through the record to find support for these assertions. Accordingly, the court concludes Mr. Huff has failed to present adequate evidence to support his claim of prosecutorial misconduct.

## V. ALLEGED NEW EVIDENCE

Mr. Huff also contends his § 2255 Motion should be granted because there is new evidence, namely, Josh Lind stating that Mr. Huff did not deliver the appraisals, the false income statements in the Lind files, and that Mr. Huff can now demonstrate he did earn an average gross [monthly] income of over $14,000 for 2002 and 2003. The court has largely addressed these issues above. Regardless of who delivered the appraisals or what Mr. Huff's income was, there is not a reasonable probability that the outcome of the trial would have been different given Mr. Huff's own actions in the matter.

## VI. ALLEGED INEFFCTIVE ASSISTANCE AT THE APPELLATE LEVEL

Finally, Mr. Huff asserts his appellate counsel was ineffective because he failed to incorporate certain arguments and facts into the appellate brief. Mr. Huff submitted a *pro se* brief, however, to the appellate court which became a matter of record. Mr. Huff references his brief in this motion to show his counsel was ineffective. The brief asserts his counsel should have argued that Mr. Huff could not be guilty of money laundering based on *United States v. Santos*, 553 U.S. 507, 520 (2008). According to Mr. Huff, unless the government proves Mr. Huff possessed "profits" as opposed to mere checks, *Santos* precludes prosecution for money laundering. This is an incorrect statement of the law.

As explained by the Tenth Circuit, "in *Santos*, . . . a 4-1-4 plurality held that in the context of an illegal gambling operation, proceeds means 'profits' rather than 'gross receipts." *United States v. Baum*, 461 Fed. Appx. 736, 738 (10th Cir. 2012) (quoting *United States v. Irvin*, 656 F.3d 1151, 1165 (10th Cir. 2011) superseded by 682 F.3d 1254 (10th Cir. 2012)) (quotations and alteration omitted). Consequently, the *Santos* holding is confined to situations "where an illegal gambling operation is involved." *Id.* (quotations and citation omitted). Absent illegal gambling, "profits" or "proceeds" means "gross receipts." *Id.* (quotations and citation omitted). The evidence at trial showed Mr. Huff received two checks from the loan proceeds, which he deposited into his bank account. Because those proceeds were connected with real estate fraud rather than illegal gambling, there is no basis to overturn Mr. Huff's conviction for money laundering. *See id.* (citation omitted).

As for the remaining facts and law asserted in Mr. Huff's *pro se* appellate brief, the court finds no basis to support that Mr. Huff's appellate counsel was ineffective for not arguing those points to the appellate court given the nature of the evidence at trial. Moreover, as Mr. Huff

stated in his motion, his brief was made part of the appellate record. Accordingly, that Court had the information when it denied Mr. Huff's appeal, so any alleged deficiency in counsel's appellate brief was remedied. The court therefore finds no basis to vacate or set aside Mr. Huff's conviction.

## CONCLUSION

For the reasons set forth above, Petitioner Jerry C. Huff's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED[5] because Mr. Huff has failed to adequately demonstrate entitlement to relief on the claims asserted. The court therefore dismisses this case.

DATED this 5th day of November, 2013.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[5] Dkt. Nos. 1 and 8.